625 A.2d 105

In re Nomination Petition of Roberta M.
DUNCAN–THOMPSON (Democrat).

Appeal of Anita K. THIEMANN, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 12, 1993.

Decided April 19, 1993.

Publication Ordered, May 17, 1993.

Karen M. Balaban, for appellant.

Kathryn D. Slade, for appellee.

Before CRAIG, President Judge, COLINS, J., and BLATT, Senior Judge.

CRAIG, President Judge.

In this election case, objector Anita K. Thiemann appeals an order of the Court of Common Pleas of Dauphin County denying the objector's Petition to Set Aside the Nominating Petition of Roberta M. Duncan–Thompson, who is seeking to place her name on the municipal primary election ballot as a Democratic candidate for the position of Justice of the Peace for Magisterial District 12–01–02.[1]

In her challenge before the trial court, the objector alleged that the nominee had failed to satisfy the requirements of

1. The candidate cross-filed a petition for nomination as the Republican candidate; however, at the hearing before the trial court, the candidate withdrew her petition as a candidate of the Republican party.

section 912.1 of the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2871.2(32), which requires candidates for office of district justice to obtain at least 100 signatures of registered voters of the political party whose nomination the candidate seeks.

Specifically, the objector requested the trial court, in determining whether the candidate had obtained the required number of signatures that would allow her name to be placed on the ballot, to (1) "take judicial notice" of thirteen crossed-out signatures and two blank lines on the candidate's nominating papers in determining the total number of valid signatures the candidate obtained, and (2) set aside the nominating petition because (a) forty persons who signed the nominating petition allegedly were not valid registered members of the Democratic Party residing within Magisterial District 12–01–02 at the time they signed the petition, (b) thirteen of the signatures are invalid because two of those signatures are duplicative and the remaining eleven signatures belong to persons who signed, at an earlier date, a nominating petition of another person who is seeking the Democratic Party's nomination to the same magisterial position as the candidate here, (c) eight signatures are not genuine, are illegible or "appear to have been affixed by someone other than the elector", (d) the circulator's affidavit for nomination petition number 2 (Petition 2) is allegedly false because, the objector asserts, the circulator was not the actual circulator for all 107 signatures on that petition and therefore Petition 2 does not satisfy the Election Code's requirements for circulators, and (e) the 107 persons who signed Petition 2 could not have had full knowledge of the petition because of the alleged falsity of the circulator's affidavit.

Thus, the objector asserted to the trial court that, if the trial court were to strike all of the 128 challenged signatures, the candidate would not have the 100 signatures required, and the court should grant the petition to set aside the nominating petition.

The objector also asserted that, based on the candidate's alleged failure to comply with the financial disclosure requirements of the Act of October 4, 1978, P.L. 883, §§ 1–13,

commonly known as the Ethics Act, the petition should be set aside as fatally defective under § 4 of the Act, 65 P.S. § 404(b)(3).

The trial court, after considering the evidence submitted at the hearing, concluded that, with regard to the forty-one signatures the objector challenged as not being persons who were residents or registered Democrats, forty of those were not registered Democrats, and struck those signatures.

The trial court struck eleven of the thirteen signatures the objector challenged as being either duplicative or signatures of persons who had signed another Democratic candidate's petition at an earlier date.

The trial court also struck the signatures of eleven persons who apparently thought they were signing a petition for a candidate to the city school board.

However, the trial court rejected the objector's assertion that all of the 107 signatures on Petition 2 should be struck because of the alleged false affidavit of the circulator. The trial court concluded that the objector had "failed to prove the ... allegations" regarding Petition 2.

Thus, the trial judge denied the motion to set aside the nominating petition of the candidate because he concluded that only sixty-two of the total of 209 signatures obtained should be stricken. The remaining 147 satisfied the Election Code's requirement of 100 signatures. However, the trial court never addressed the issue of whether the candidate's alleged failure to comply with the financial disclosure requirements of the Ethics Act constitutes a fatal defect which would preclude the placement of her name on the ballot.

In this appeal, the objector raises the following issues: (1) whether the failure of a candidate for district justice to file, on or before the last day for filing a petition to appear on the ballot for election, with the president judge of the common pleas court of the county in which the candidate seeks office, a statement of financial interest for the preceding calendar year, is a violation of section 4(b)(2) of the Ethics Act, 65 P.S. § 404(b)(2), and a fatal defect under 65 P.S. § 404(b)(3), which

warrants setting aside the candidate's petition; (2) whether the candidate's nominating Petition 2 should be struck entirely because it bears a false or invalid circulator's affidavit, based on the objector's assertion that a circulator of the petition misrepresented to signers the candidate's identity and the office the candidate is seeking; and (3) whether the trial court erred in not permitting the objector to present a rebuttal witness to testify on the credibility of the candidate, after the candidate had testified.

*Failure to File Financial Interest Statement With President Judge*

■ The provisions of the Ethics Act upon which the objector relies, state in pertinent part as follows:

**§ 404. Statement of financial interest required to be filed**

. . . . .

(b)(2) Any candidate for county-level or local office shall file a statement of financial interests for the preceding calendar year with the *governing authority of the political subdivision* in which he is a candidate on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interest shall also be appended to such petition.

(3) No petition to appear on the ballot for election shall be accepted by the respective State or local election officials unless the petition has appended thereto a statement of financial interests as set forth in paragraphs (1) and (2). *Failure to file the statement in accordance with the provisions of this act shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot.* (Emphasis added.)

The Act defines the term "political subdivision" as "[a]ny county, city, borough, incorporated town, township, school district, vocational school, county institution district, and any authority, entity or body organized by the aforementioned." § 2, 65 P.S. § 402. Because that definition does not include county courts of common pleas, and because such a court is

not an "entity or body" organized by any of the agencies mentioned, the president judge of a common pleas court is not a "governing authority" of any "political subdivision." Hence, this court must conclude that the Act does not place any duty upon candidates to file a statement of financial interest with the president judge of the court of common pleas. Instructions to do so, issued by the county Elections Bureau, cannot change the law. Therefore, this court must conclude that the trial court did not err in refusing to set aside the candidate's nominating petition on that basis.

### Propriety of Circulator's Actions

The objector argues that the trial court should have struck all 107 signatures on Petition 2 because (1) the circulator's affidavit is allegedly false, based on the objector's assertion that the affiant of the circulator's affidavit was not the actual circulator as to all of the signatures and (2) the circulator's affidavit is allegedly false, based on the objector's assertion that the circulator misrepresented to *all* signers the identity of the candidate and the office the candidate was seeking.

The objector points out that she successfully had 23 of the 107 signatures on Petition 2 stricken and that there is testimony of approximately eleven or twelve more witnesses to indicate that the circulator misled *all* the signers as to the office and candidate for which they were signing the petition.

The objector thus contends that the "totality of the evidence" indicates that the circulator engaged in a course of conduct to misrepresent the nature of Petition 2 to all of its signers.

The objector relies upon this court's decision in *In re Shannon,* 132 Pa.Commonwealth Ct. 497, 573 A.2d 638 (1990), in which this court stated that the Election Code does not require this court to accept a "shotgun approach" by candidates in gathering qualified signers on nomination petitions. The objector argues that the proof she offered to the trial court establishes that the circulator did not act with due

diligence in attempting to ascertain whether the persons whose signatures he obtained were registered voters, because 20% of the persons who signed were not registered and that the evidence establishes that at least 10% of the signers were misled with regard to the identity of the candidate and the office for which election was being sought.

However, *Shannon* is distinguishable from this case. An objector challenged a candidate's nomination petition based in part on the assertion that the affiant of the circulation petition was not the actual circulator and that one circulator was not a registered elector at the time she circulated the petition. The court struck the signatures obtained by the circulator who was not registered, and denied the candidate's motion to amend portions of the petition on the basis that the candidate was the actual circulator of the petition papers. The judge in that case exercised his discretion in denying the candidate's petition to amend the circulator's affidavit.

In this case, the trial court apparently believed the testimony of the circulator, and concluded that the objector had not met the burden of proof to negate Petition 2 signers not testifying. The testimony of the circulator indicates that he circulated the petition himself, that he asked each signer to sign two petitions, one for his candidacy on the school board and another for the present candidate's nomination, and that he advised each signer concerning the different petitions for which he was seeking signatures.

The objector, relying on *Shannon*, where the court apparently based its decision in part on the fact that the only witness to testify was the candidate, suggests that the evidence in this case is insufficient to support the trial court's conclusion, because there was no additional evidence from a "disinterested witness." However, the circulator's interest in this case is not equivalent to the candidate's interest in *Shannon*. Furthermore, this court's function in an appeal is not to second-guess the trial court's credibility findings. The circulator's testimony is sufficient to support the trial court's conclusion that the objector did not satisfy her burden of proof as to *all* the signatures on Petition 2.

Accordingly, this court will not reverse the trial court's decision on the basis of the circulator's alleged misrepresentations.

### Trial Court's Refusal to Permit a Rebuttal Witness

The objector also contends that the trial court erred by not allowing her to present the testimony of a rebuttal witness regarding the candidate's credibility. However, that witness' testimony concerned only the candidate's conduct in circulating nomination papers for the Republican party nomination. In this case, the only issues before the trial court concerned the validity of the circulator's affidavit for her Democratic nominating papers. The circulator's testimony is sufficient to support the trial court's conclusion, and the testimony the objector proposes to offer does not relate to the candidate's conduct in conducting her campaign for the Democratic party nomination. Hence, this court concludes that the trial court did not err in not permitting that testimony.

We cannot review certain signatures or groups newly challenged in the objector's reply brief because those challenges go beyond the Statement of Questions Involved in the appellant's brief, as summarized on pp. 4, 5 of this opinion.

Accordingly, the trial court's order is affirmed.

### ORDER

NOW, April 19, 1993, the order of the Court of Common Pleas of Dauphin County, dated March 22, 1993, at No. 931 S 1993, is affirmed.